UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

WALTER LEE JONES,

                    Plaintiff,                          Case No. 1:09-cv-633

v.                                                      Honorable Paul L. Maloney

ANN SMOLINSKI et al.,

                    Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim except for Plaintiff's First Amendment retaliation claim against Defendant Ann Smolinski for placing Plaintiff on unemployable status.

**Discussion**

I.     Factual allegations

Plaintiff Jones presently is incarcerated at the Alger Maximum Correctional Facility, but he complains of events that occurred at the Bellamy Creek Correctional Facility (IBC).  In his *pro se* second amended complaint, Plaintiff sues IBC Classification Director Ann Smolinski; IBC Captain (Unknown) Schneider;  IBC Assistant Resident Unit Manager M. Walczak; American International Group, Incorporated; and National Union Fire Insurance Company of Pittsburgh, Pennsylvania.

First, Plaintiff challenges his reclassification as unemployable.  On March 7, 2006, Plaintiff filed a grievance against Defendant Smolinski for discrimination, retaliation and the arbitrary denial of Plaintiff's placement in certain job pools for six months.  (Second Am. Compl. at 3-4, docket #7.)  Soon thereafter, Plaintiff attended a reclassification meeting with Assistant Resident Unit Supervisor D. Drake.  At that meeting, Plaintiff apparently picked three prison jobs but all of his selections were eventually denied by Defendant Smolinski.  On March 13, 2006, Defendant Smolinski and Plaintiff met to discuss Plaintiff's "unwillingness" to choose three new jobs after his first three selections were denied.  (*Id.* at 4.)  Instead of selecting a job assignment for Plaintiff, Smolinski directed Plaintiff to sign the Assignment Waiver form, which confirms a prisoner's refusal to work or attend school.  Plaintiff declined to sign the form.  Plaintiff alleges that he never refused a work assignment.  Plaintiff argues that Defendant Smolinski should have chosen a job for him under Michigan Department of Corrections (MDOC), Policy Directive 05.01.100, ¶¶F

& L (effective Jan. 1, 2001).[1]

At the reclassification meeting with Defendant Smolinski, Plaintiff also reminded Defendant Smolinski of his grievance against her. In response, Defendant Smolinski stated that "filing a grievance is not going to have any impact on your program classification but it could have an impact on your custody." (*Id.*) Later that day, Plaintiff received an Offender Daily Schedule, which provided that he was to remain in his housing unit during the day due to his "unemployable status."[2] (*Id.* at 5.)

Second, Plaintiff challenges a MDOC Security Reclassification Notice dated March 21, 2006. (Second Am. Compl. at 5-7.) Because Plaintiff refused to participate in program reclassification, Defendants Schneider and Walczak increased Plaintiff's security classification from security level II to security level IV. (*Id.* at 6.) The March 21, 2006 MDOC Security Reclassification Notice for Plaintiff provides the following (the italicized items were added by Defendants Schneider and Walczak):

---

[1]MDOC Policy Directive 05.01.100 provides:

F. [I]nstitutional needs and resources, custody and security concerns, any special needs of the prisoner, the prisoner's eligibility for reduced custody, discharge and parole and, to the extent possible, the prisoner's preference also shall be considered when making program classification decisions . . . .

L. The Classification Director shall consider the same factors considered to determine initial classification decisions for reclassification decisions . . . . If the Classification Director and the prisoner agree with the reclassification, no further interview is necessary before the prisoner is reclassified. If the Classification Director or prisoner disagrees with the reclassification, the Classification Director shall interview the prisoner before reaching a final reclassification decision.

MICH. DEP'T. OF CORR., Policy Directive 05.01.100, ¶¶F & L (effective Jan. 1, 2001).

[2]A prisoner who refuses to accept or fails to fully and actively participate in a school or work assignment may be reclassified as unemployable. MICH. DEP'T OF CORR., Policy Directive 05.01.100, ¶Y(3). Unemployable prisoners, with the exception of those deemed unemployable because of their medical condition, are not permitted to participate in any more leisure time activities than those who work full time. *Id.* at ¶AA.

The above named prisoner has been found guilty in a formal Administrative Hearing of the following Major Misconduct Violations

       Misconduct Charge                   Date of Hearing

1.___*"00" Unemployable*___          _____
2._____          _____
3._____          _____
4._____          _____
5._____          _____
6._____          _____
_____

We have reviewed the above Misconduct Hearing Reports of this prisoner and order Reclassification

TO: _*LEVEL IV*_____

Because such Misconduct(s): (check those that are applicable)

☐      Demonstrate inability to be managed with group privileges (if reclassification is to Administrative Segregation).

☐      Show that this prisoner is a serious threat to the physical safety of staff and/or other prisoner[]s at this facility.

☐      Show that this prisoner is a serious escape threat from this facility.

*X*      Demonstrate an inability to be safely managed at this level of security.

☐      Show that this prisoner is a threat to the order and security of this facility.

☐      Other _____

(Attach. A to Second Am. Compl.) (emphasis added.)   Plaintiff states that Defendants Schneider and Walczak based his security level increase on a false misconduct charge.  Plaintiff alleges that he was never found guilty in a formal administrative hearing of a Major Misconduct violation.  Finally, Plaintiff claims that Defendants Schneider and Walczak's "fraudulent and dishonest acts"

are covered by the insurance policies of American International Group, Incorporated and National Union Fire Insurance Company of Pittsburgh, Pennsylvania. (Second Am. Compl. at 8.)

Plaintiff asserts the following nine claims arising from the above events: 1) Defendant Smolinski denied Plaintiff's due process rights during a MDOC reclassification meeting by not following MDOC policy and assigning Plaintiff a job; 2) Defendants Schneider and Walczak violated Plaintiff's due process rights by using his unemployable status as a substitute for a Major Misconduct violation in order to increase Plaintiff's security level; 3) Defendant Smolinski violated Plaintiff's rights under the Equal Protection Clause by treating him differently than other similarly situated prisoners during Plaintiff's program reclassification; 4) Defendants Schneider and Walczak violated Plaintiff's equal protection rights by treating Plaintiff differently from other similarly situated Plaintiff's during Plaintiff's security classification proceedings; 5) Defendant Smolinski placed Plaintiff on unemployable status in retaliation for filing a grievance against her in violation of Plaintiff's First Amendment rights; 6) Defendants Schneider and Walczak retaliated against Plaintiff by increasing his security level because Plaintiff filed a grievance against Defendant Smolinski; and 7) Plaintiff is entitled to a settlement under the American International Group and National Union Fire Insurance Company because Defendants Schneider and Walczak forged a MDOC document. (Second Am. Compl. at 9-14.) Based on the allegations in Plaintiff's complaint, the Court finds two other causes of action: 8) Plaintiff's Eighth Amendment rights were violated when he was exposed to secondhand smoke at the facility where he was transferred; and 9) Defendants Schneider and Walczak conspired with Defendant Smolinski to retaliate against Plaintiff for filing the grievance against Smolinski. (Second Am. Compl. at 7-8); *see also Haines*, 404 U.S. at 520.

- 5 -

For relief, Plaintiff requests monetary damages and injunctive relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A. **Due Process Clause**

Plaintiff alleges the following two due process claims. First, Plaintiff claims that Defendant Smolinski violated his due process rights by failing to assign him to a job in accordance with MDOC policy. Second, Plaintiff argues that Defendants Schneider and Walczak violated his due process rights by using his unemployable status as a substitute for a Major Misconduct violation on his MDOC Security Reclassification Notice in order to increase his security classification level. (Second Am. Compl. at 9-10.)

The Due Process Clause of the Fourteenth Amendment provides that no state "shall deprive any person of life, liberty, or property without due process of law." U.S.C.A. Const. Amend. 14. Thus, the Constitution is implicated only if a person is deprived of an interest protected by the Due Process Clause. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). Without a protected liberty interest, plaintiff cannot successfully

claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

### 1. Unemployable Status

Plaintiff alleges that Defendant Smolinski denied him due process during the program reclassification process by failing to assign him to a job in accordance with MDOC policy. Because he was not assigned to a job, Defendant Smolinski classified Plaintiff as unemployable. First, the failure of Defendant Smolinski to follow MDOC policy fails to state a due process claim. Claims under § 1983 may not be based upon alleged violations of state law, nor may federal courts order state officials to comply with their own law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *see also Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-2347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Because Plaintiff does not enjoy any federally protected liberty or property interest in state procedure, he fails to state a due process claim based on Defendant Smolinski's refusal to follow MDOC policy. *See Olim*, 461 U.S. at 250; *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994).

Moreover, the Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to

any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same).

Further, "as the Constitution and federal law do not create a property right for inmates in a job, they

likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL

21518730, at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) and *James v.*

*Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Because Plaintiff has no liberty or property interest

in employment, he was not entitled to due process before being classified as unemployable.

Further, the Sixth Circuit repeatedly has found that confinement to administrative

segregation, which is considerably more restrictive than unemployable status, also does not present

an "atypical and significant" hardship implicating a protected liberty interest. *See Jones v. Baker*,

155 F.3d 910, 812-13 (6th Cir. 1998) (two years of segregation while inmate was investigated for

murder of prison guard in riot); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (one year of

segregation after inmate was found guilty of possession of illegal contraband and assault and where

reclassification was delayed due to prison crowding); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91

(6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of

detention for misconduct conviction of conspiracy to commit assault and battery). Likewise, the

Sixth Circuit has held that a prisoner's confinement to his cell on weekdays while other prisoners

work or attend school does not constitute an atypical or significant hardship. *See Ingram v. Harry*,

97 F. App'x 20, 21 (6th Cir. 2004). Accordingly, the conditions of confinement of a prisoner on

unemployable status are not atypical, and, thus, fail to raise a due process claim.

2.     Security Level Increase

Plaintiff next argues that Defendants Schneider and Walczak violated his due process

rights by using his unemployable status as a substitute for a Major Misconduct violation on his

MDOC Security Reclassification Notice in order to increase his security classification level.[3]

Plaintiff is essentially complaining about the procedures effecting his security classification. In

*Sandin*, 515 U.S. at 484, the Supreme Court held that a prisoner does not have a protected liberty

interest in the procedures affecting his classification and security because the resulting restraint does

not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents

of prison life." Moreover, the Supreme Court repeatedly has held that a prisoner has no

constitutional right to be incarcerated in a particular facility or to be held in a specific security

classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*,

427 U.S. at 228-29.

In the MDOC, security classifications, from least to most secure, are as follows:

levels I, II, III, IV, V and segregation. MICH. DEP'T OF CORR., Policy Directive 05.01.130, ¶B

(effective Dec. 31, 2007). Plaintiff complains of being reclassified from security level II to security

level IV. The Sixth Circuit has followed the Supreme Court's rulings in a variety of security

classification challenges. *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir.

Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted

based on the information contained in his prison file failed to state a due process claim because he

had no constitutional right to be held in a particular prison or security classification); *O'Quinn v.

Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due

---

[3]It appears from Plaintiff's MDOC Security Reclassification Notice dated March 21, 2006, that Plaintiff was not actually charged with a Major Misconduct. Rather, Defendants Schneider and Walczak wrote "'00' Unemployable" under "Misconduct Charge" as the reason for Plaintiff's security level increase rather than to document a Major Misconduct conviction. (*See* Attach. A to Second Am. Compl.) There is no other place on the form to write anything but a Major Misconduct. (*Id.*) Further, Plaintiff never alleged in his second amended complaint that he lost any good-time credits as a result of a Major Misconduct conviction.

process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement).

As stated above, even a prisoner's placement in administrative segregation does not implicate a liberty interest. In *Rimmer-Bey*, 62 F.3d at 790-91, the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and a hearing before being placed in administrative segregation. The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Rimmer-Bey*, 62 F.3d at 790-91; *see also Mackey*, 111 F.3d at 463. Because a prisoner's transfer to administrative segregation does not constitute an atypical and significant hardship, Plaintiff's transfer to a less restrictive security level necessarily is insufficient to implicate due process. Therefore, Plaintiff fails to state a due process claim for his increase in security level.

### B.  Equal Protection Clause

In his second amended complaint, Plaintiff argues that Defendant Smolinski violated his equal protection rights by treating him differently than other similarly situated prisoners when she failed to follow MDOC policy during Plaintiff's program reclassification process. Plaintiff also claims that Defendants Schneider and Walczak violated his equal protection rights by treating him differently than other similarly situated prisoners when they failed to follow MDOC policy during Plaintiff's security classification proceedings. (Second Am. Compl. at 11-13.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially

a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Petitioner does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998).

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006).  "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'"  *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)).  To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

1.      Unemployable Status

Plaintiff states that Defendant Smolinski violated his equal protection rights by treating him differently than other similarly situated prisoners when she failed to follow MDOC Policy Directive 05.01.100 by selecting a job for Plaintiff.

Under a class of one equal protection theory, a plaintiff must include in his complaint facts that demonstrate disparate treatment of similarly situated individuals. *Vill. of Willowbrook*, 528 U.S. at 564; *Ross v. Duggan*, 402 F.3d 575, 587-88 (6th Cir. 2004). Plaintiff's allegations, however, are wholly conclusory. He merely states that he is being treated differently, but provides no specific factual allegations demonstrating that MDOC policies were not enforced against other prisoners. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 555.

Further, the facts alleged by Plaintiff provide a rational explanation for his classification as unemployable. A prisoner may be reclassified as unemployable when the prisoner "refuses to participate in program classification as required by the policy" according to MDOC Policy Directive 05.01.100, ¶Y(4) (effective Jan. 1, 2001). Plaintiff refused to choose three job assignments after his first three assignments were rejected. Besides refusing to select a job assignment, Plaintiff also refused to sign the Assignment Waiver form. (Second Am. Compl. at 4, docket #7.) Because of Plaintiff's refusal to participate in the selection of his job assignment, Defendant Smolinski had a rational basis for labeling Plaintiff as unemployable. Therefore, Plaintiff fails to state an equal protection claim as to his reclassification as unemployable.

2.      Security Level Increase

Plaintiff claims that Defendants Schneider and Walczak violated his equal protection rights by treating him differently than other similarly situated prisoners when they failed to follow MDOC policy during Plaintiff's security classification proceedings. (Second Am. Compl. at 12.) Plaintiff argues that none of the MDOC policy directives require a security level increase when a

prisoner is classified as unemployable. (Second Am. Compl. at 7.) Plaintiff also claims that a prisoner's classification as unemployable is not listed as a Major Misconduct violation pursuant to Attachment A of MDOC Policy Directive 03.03.105. Because Defendant did not follow policy, Plaintiff concludes that he was treated differently than similarly situated prisoners.

Again, Plaintiff's claim is conclusory. Plaintiff does not present any allegations regarding similarly situated prisoners. *See Vill. of Willowbrook*, 528 U.S. at 564; *Ross*, 402 F.3d at 587-88. As previously stated, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft*, 129 S. Ct. at 1949-950; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff fails to state an equal protection claims as to his security classification.

C.     **Retaliation**

Plaintiff asserts two claims of retaliation in his complaint. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

First, Plaintiff claims that Defendants Schneider and Walczak retaliated against him by increasing his security level because Plaintiff filed a grievance against Defendant Smolinski. Second, Plaintiff claims that Defendant Smolinski violated his First Amendment rights when she placed Plaintiff on unemployable status because Plaintiff filed a grievance against her.

Plaintiff claims that he was retaliated against because he filed a grievance against Defendant Smolinski. (Second Am. Compl. at 10-11.) Plaintiff satisfies the first requirement of *Thaddeus-X* because the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subject to retaliation. *Thaddeus-X*, 175 F.3d at 394; *see also Campbell*, 250 F.3d at 1037; *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Plaintiff, however, must also show that there was an adverse action taken against him and that the adverse action was causally connected to the filing of the grievance against Defendant Smolinski. An adverse action "is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X,* 175 F.3d at 396 (quoting *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir. 1982)).

Plaintiff fails to state a retaliation claim against Defendants Schneider and Walczak for his security level increase. Plaintiff has not provided sufficient factual allegations that Defendants Schneider and Walczak's decision to increase Plaintiff's security level was motivated by Plaintiff's grievance against Defendant Smolinski. *See Thaddeus-X*, 175 F.3d at 394 (a plaintiff must prove that the adverse action was motivated, at least in part, by the protected conduct.) In his complaint, Plaintiff provides:

> 29. During the [] hearing, Defendants Schneider and M. Walczak, were engaged in their employment duties as members of the [Security Classification Committee], and did inform Plaintiff that because of his failure to participate in program

reclassification, he was being reclassified from a Level II security custody setting to a Level IV close custody prison setting.

(Second Am. Compl. at 6.) Plaintiff admits that Defendants Schneider and Walczak were engaged in their "employment duties." (*Id.*) Plaintiff's retaliation claims for his security level increase are entirely conclusory. Plaintiff has not provided any connection between the filing of the grievance against Defendant Smolinski to his increase in security level by Defendants Schneider and Walczak. Once again, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft*, 129 S. Ct. at 1949-950; *Twombly*, 550 U.S. at 555. Therefore, Plaintiff fails to state a retaliation claim against Defendants Schneider and Walczak for his security level increase.

At this stage of the proceedings, the Court finds that Plaintiff's allegations for retaliation against Defendant Smolinski state a claim. Therefore, the Court will serve the retaliation claim against Defendant Smolinski for placing Plaintiff on unemployable status.

D.      **Eighth Amendment**

Plaintiff alleges an Eighth Amendment claim because he was exposed to secondhand smoke in a level IV prison cell. (Second Am. Compl. at 8.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only

concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

*Helling v. McKinney,* 509 U.S. 25 (1993) is the seminal Supreme Court case in this area. In *Helling*, a prisoner initiated a § 1983 action against prison officials claiming that his involuntary exposure to ETS from a cellmate[4] posed an unreasonable risk of serious damage to his future health in violation of the Eighth Amendment. *Helling*, 509 U.S. at 35. The Supreme Court affirmed the decision of the Court of Appeals to remand the case to the district court to allow the prisoner an opportunity to prove his case, which also required the prisoner to prove both the subjective and objective elements necessary for an Eighth Amendment violation. *Id.* Relevant to the objective element is whether the prisoner endured unreasonably high exposure to ETS that society would consider violative of contemporary standards of decency. *Id.* at 35-36. Relevant to the subjective element is whether prison officials had exhibited deliberate indifference with regard to the dangers of a prisoner's exposure to ETS. *Id.* at 36.

Plaintiff fails to satisfy the objective component for an Eighth Amendment violation. To prove the objective element, the prisoner must first show that he has been exposed to unreasonably high levels of ETS. *Id.* at 35. "More than mere scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will be caused by exposure to ETS" is necessary to establish the objective component. *Id.* at 36. Second, "the prisoner

---

[4]The cellmate in *Helling* smoked five packs of cigarettes a day. *Helling,* 509 U.S. at 35.

must show that the risk of which he complains is not one that today's society chooses to tolerate."
*Id.*

Plaintiff merely alleges the fact of his exposure to ETS while housed in a level IV prison cell. Plaintiff failed to allege any facts quantifying his level of exposure. Plaintiff's conclusory allegations regarding the level of ETS to which he was exposed fail to support the objective component of an Eighth Amendment claim. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft*, 129 S. Ct. at 1949-950; *Twombly*, 550 U.S. at 555.

Further, it is also obvious from the case law in this area that the risk of which Plaintiff complains *is* one that today's society chooses to tolerate. *See Griffin v. DeRosa*, 153 F. App'x 851, 853 (3d Cir. 2005) (a prisoner's allegation that he had been exposed to ETS in inadequately ventilated restrooms over twenty months failed to show that the prisoner was exposed to unreasonably high levels of ETS contrary to contemporary standards of decency); *Hankins v. Bethea*, No. CIVA 0:05-3334 DCNBM, 2007 WL 172509, at *6 (D.S.C. Jan. 18, 2007) ("[e]xposure to moderate levels of cigarette smoke is a common fact of contemporary life, and [p]laintiff has failed to present evidence to show that the amount of ETS he was exposed to during the relatively short [5-month] period of time set forth in his [c]omplaint was at such an unreasonably high level that it violated contemporary standards of decency"); *Colon v. Sawyer*, No. 9:03-CV-1018 LEK/DEP, 2006 WL 721763, at *9 (N.D.N.Y. Mar. 20, 2006) (asthmatic plaintiff's claim that "he

[was] housed in a dormitory unit where smoking [was] permitted, and that he [was] subjected to ETS near the dining hall entrance and exit, as well as his speculation that such circumstances 'may result in catastrophic harm to [him],' . . ., simply [did] not describe conditions that rise to a level which today's society chooses not to tolerate"); *see also Conyers v. Mich. Dep't of Corr.*, No. 5:06-cv-100, 2006 WL 2644990, at *6 (W.D. Mich. Sept. 14, 2006). The Supreme Court in *Helling* did not mandate smoke-free prisons. *Williams v. Howes,* No. 1:05-cv-817, 2007 WL 1032365, at *14 (W.D. Mich. Mar. 30, 2007) (citing *Scott v. Dist. of Columbia*, 139 F.3d 940, 942 (D.C. Cir. 1998) and *Mansoori v. Lappin,* No. 04-3241-JAR, 2007 WL 401290, at *10 (D. Kan. Feb. 1, 2007)). A prisoner's exposure to smoke must cause more than mere discomfort or inconvenience. *Talal v. White,* 403 F.3d 423, 426 (6th Cir. 2005). Plaintiff does not allege any serious medical problem related to his ETS exposure such as asthma or allergies. *See Oliver v. Deen*, 77 F.3d 156, 159-61 (7th Cir. 1996) (an asthmatic inmate's assignment to cells with smoking inmates for 133 days resulting in ETS exposure which aggravated the plaintiff's asthma and necessitated his increased use of an inhaler failed to satisfy the objective component); *Williams,* 2007 WL 1032365, at *15 (asthmatic inmate's exposure to ETS during a seven-month period failed to satisfy the objective component). Therefore, Plaintiff's allegations fail to satisfy the objective element for an Eighth Amendment claim.

Plaintiff further fails to meet the subjective element of the *Helling* test, i.e., that Defendants were deliberately indifferent to Plaintiff's exposure to unreasonably high levels of ETS. IBC prison officials had appropriate policies in place. MDOC Policy Directive 01.03.140 states that smoking is prohibited in prisoner housing units. *See* MICH. DEP'T OF CORR., Policy Directive 01.03.140, ¶B (effective Apr. 24, 2006). The adoption of the MDOC's no-smoking policy and the

- 19 -

prison officials' current attitude and conduct, which reflect a "zero tolerance" for smoking in the housing units, bears heavily on the deliberate indifference inquiry.[5] *See Helling*, 509 U.S. at 36. It is well established that imperfect enforcement of a non-smoking policy does not rise to the level of deliberate indifference. *Talal*, 403 F.3d at 427; *Wilson v. Hofbauer*, 113 F. App'x 651, 652 (6th Cir. 2004) (imperfect enforcement of MDOC Policy Directive 01.03.140, which prohibited smoking in all occupied buildings, including housing units, "show[ed], at most, negligence by the defendants, rather than deliberate indifference"); *Moorer v. Price*, 83 F. App'x 770, 773 (6th Cir. 2003) (imperfect enforcement of MDOC Policy Directive 01.03.140 does not equate to deliberate indifference). Accordingly, Plaintiff's allegations concerning his exposure to ETS fail to state an Eighth Amendment claim.

E.      **Conspiracy**

Plaintiff alleges that Defendants Schneider and Walczak conspired with Defendant Smolinski to retaliate against Plaintiff for filing a grievance against Defendant Smolinski. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102,106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the

---

[5]The Court notes that MICH. DEP'T. OF CORR., Policy Directive 01.03.140 prohibits smoking by offenders and MDOC employees inside all MDOC buildings and within 100 feet of any entrance to those buildings. MICH. DEP'T. OF CORR., Policy Directive 01.03.140, ¶G (effective Feb. 1, 2009).

existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.*, No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995). Plaintiff's allegations of conspiracy are vague, conclusory and speculative. Therefore, he fails to state a claim for conspiracy.

F.      **Defendants American International Group and National Union Fire Insurance Company**

Plaintiff argues that he is entitled to a settlement under the MDOC's insurance policies with American International Group and National Union Fire Insurance Company because Defendants Schneider and Walczak forged a MDOC document. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Plaintiff has not presented any allegations by which American International Group and

National Union Fire Insurance Company could be fairly attributed to the State. Accordingly, he fails to state a § 1983 claim against American International Group and National Union Fire Insurance Company.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's complaint for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) except for Plaintiff's First Amendment retaliation claim against Defendant Ann Smolinski for placing Plaintiff on unemployable status.

An Order consistent with this Opinion will be entered.

Dated:  October 13, 2009               /s/ Paul L. Maloney
                                        Paul L. Maloney
                                        Chief United States District Judge