UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| WALTER LEE JONES, # 235079, a/k/a Walter Lee Jones-Bey, | |
| Plaintiff, | Case No. 1:09-cv-633 |
| v. | Honorable Paul L. Maloney |
| ANN SMOLINSKI, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

       This is a civil rights action brought by *pro se* by a state prisoner under 42 U.S.C. § 1983. The events giving rise to this lawsuit allegedly occurred in March 2006, while plaintiff was an inmate at the Bellamy Creek Correctional Facility (IBC). IBC's Classification Director Ann Smolinski is the defendant. Plaintiff alleges that defendant retaliated against him in violation of his First Amendment rights when she classified him as unemployable. He sues defendant in her official and individual capacities and seeks damages and injunctive relief.

       The matter is now before the court on defendant's motion for summary judgment. (docket # 27). Plaintiff filed his response (docket #s 33, 34), and defendant's motion is ready for decision. For the reasons set forth herein, I recommend that plaintiff's claims for injunctive relief be dismissed as moot and that his claims for damages against defendant in her official capacity be dismissed with prejudice as barred by Eleventh Amendment immunity. I further recommend that

defendant's motion for summary judgment (docket # 27) be granted on all plaintiff's remaining claims and that a final judgment be entered in defendant's favor.

**Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

**Proposed Findings of Fact**

The following facts are beyond genuine issue.[1] Plaintiff is an inmate in the custody of the Michigan Department of Corrections (MDOC), where he is serving a non-parolable life sentence imposed in 1994 on his first-degree murder conviction. He was an inmate at the Bellamy Creek Correctional Facility (IBC) in early 2006.

On January 31, 2006, plaintiff met with Assistant Resident Supervisor (ARUS) Drake to discuss his prison employment "reclassification." (docket # 24 ¶ 7, ID # 155). Plaintiff and Drake signed a form (CSX-175) indicating that plaintiff was "eligible for placement in the 808 Legal Writer, 702 Law Library and 674 (or 614) MSI (Michigan State Industries) work pools." (*Id.* at ¶¶

---

[1]Plaintiff's second amended complaint is verified under penalty of perjury. (docket # 24 at 8, ID # 161). The portions of plaintiff's pleading satisfying the requirements of Rule 56(e) of the Federal Rules of Civil Procedure are considered as an affidavit in opposition to defendant's motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407 (6th Cir. 2008); *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000). Legal conclusions, whether asserted by a party in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Doe v. Magoffin County Fiscal Ct.*, 174 F. App'x 962, 966 (6th Cir. 2006).

8, 9). IBC's Classification Director Ann Smolinski denied plaintiff the job placement that he had requested, but she did approve him for other work assignments. It was Smolinski's practice to forward a decision denying a requested placement to the ARUS, thus providing the prisoner with an opportunity to choose another available job placement. (docket # 28-4, Smolinski Aff. ¶ 6, ID # 187). On March 7, 2006, plaintiff met with ARUS Drake. Plaintiff expressed his dissatisfaction with Smolinski's decision placing him in IBC's housing unit porter or yard crew work pools. He wanted a job as a legal writer or working in the law library or for MSI. (docket # 24 ¶¶ 10-11, ID #s 155-56; Plf. Aff. ¶ 23, ID # 227). On March 7, 2006, he filed a grievance against Smolinski. (docket # 24 ¶ 12, ID # 156; docket # 34, Plf. Aff. ¶¶ 4-5, 24-25, ID #s 224, 227).

On March 13, 2006, Ms. Smolinski met with plaintiff to discuss his objection to her classification decision, as she was required to do under MDOC policy. (Policy Directive 05.01.100 ¶ L, ID # 191; docket # 24 ¶¶ 14-15, ID # 156; docket # 28-4 ¶ 8, ID # 187). Although she was required to "interview" plaintiff regarding his disagreement with her reclassification decision, Ms. Smolinski was not required to capitulate to plaintiff's reclassification demands. (*Id.* at ID # 191). Plaintiff states that he argued with Smolinski for about two minutes, claiming that she had violated policy by providing an insufficient explanation of her reasons for denying him the reclassification that he wanted. (Plf. Aff. ¶ 7, ID # 225). He states that Smolinski then interjected his grievance into their conversation, and that he responded by instructing Smolinski that if she knew about his grievance, she was not permitted to discuss it with him. (*Id.* at ¶¶ 7-9). Plaintiff states that Ms. Smolinski ignored his statement and began reciting out loud the contents of an Assignment Waiver Form (CSJ-126). Smolinski was required by policy to review this form with plaintiff, thereby informing him of the consequences of being classified as unemployable. (Policy Directive 05.01.100

¶ Z, ID # 193). If necessary, she was also called upon to witness plaintiff's refusal to sign this document. (*Id.*). She advised plaintiff that his refusal to sign would be considered a refusal to be reclassified. (docket # 24, ¶ 18, ID #'s 156-57). When Smolinski had finished, she directed plaintiff to sign the form. (*Id.* at ¶ 10). Plaintiff refused, offering a series of justifications. (*Id.* at ¶¶ 11-14). He "informed Smolinski that [he] was not going to sign the form as [he] had never refused a job assignment because one had not been provided to [him] by the IBC institution, and signing the form would be a false acknowledgment that [he had been] given a job by the institution but [had] declined to accept or perform the duties of the job." (*Id.* at ¶ 11). He told Smolinski that he thought that signing the form could undermine arguments he had made in his grievance expressing his disagreement with her decision denying his request for reclassification. (*Id.* at ¶ 14).

Among the consequences of plaintiff's decision to reject his reclassification was that he was classified as unemployable.[2] (Smolinski Aff. ¶ 11, ID # 187; P.D.05.01.100 ¶ Z, ID # 193). Smolinski was required to notify the Security Classification Committee (SCC) of plaintiff's unemployable status. (Smolinski Aff. ¶¶ 11, 12, ID # 199). According to plaintiff, Smolinski never explained to him that if he refused to accept her job classification decision he would be classified as unemployable or that his unemployable status would be reported to the SCC. (Plf. Aff. ¶¶ 34, 36, ID # 228-29). On March 13, 2006, defendant classified plaintiff as unemployable because he

---

[2] Defendant's attorney filed the version of operating procedure 05.01.100 that was in effect in October 15, 2009, rather than the version that was in effect on March 13, 2006, when defendant made her decision. (docket # 28-4, ID #s 195-201). The difference does not appear to be significant because Smolinski's affidavit states that throughout her tenure as IBC's classification director, the prison's operating procedure has required notice to the SCC of a prisoner's unemployable status. (Smolinski Aff. ¶¶ 12, 13, ID #s 187-88).

"refused to be reclassified to a work pool from the available work assignments." (Smolinski Aff. ¶ 16, ID # 188; Plf. Aff. ¶¶ 16, 32, ID #s 226, 228).

The SCC evaluated plaintiff on March 21, 2006. (Plf. Aff. ¶ 17, ID # 226). Ms. Smolinski was not a member of the SCC. (Smolinski Aff. ¶ 14, ID # 188). Plaintiff estimates that his SCC evaluation lasted "3 to 4 minutes." (Plf. Aff. ¶ 18, ID # 226). According to plaintiff, an unidentified person on the SCC notified him that he was present before the committee because he had "exhibited aggressive behavior and disruptive conduct during an initial program classification interview and that [he had] refused to be reclassified." (*Id.*). The SCC recommended that plaintiff be reclassified to a higher security level, and based on its recommendation, plaintiff was transferred to another prison. (docket # 1-2, ID # 15; docket # 6-2, ID # 60; docket # 24, ¶ 30, ID # 158; Plf. Aff. ¶ 19, ID # 226).

On July 10, 2009, three years and four months after defendant classified him as unemployable,[3] plaintiff filed this lawsuit.

**Discussion**

1.  Mootness

Plaintiff is an inmate at the St. Louis Correctional Facility. (docket # 34). Defendant is employed by the State at IBC. Plaintiff's claims for injunctive relief against defendant are moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010).

---

[3]"Unemployable prisoners" are considered for reclassification "every 30 calendar days until returned to work or school . . . ." (docket # 28-4, P.D.05.01.100 ¶ BB, ID # 193).

2. <u>Eleventh Amendment Immunity</u>

Plaintiff's claims for damages against defendant in her official capacity are barred by Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.

3. <u>Prison Employment, Place of Incarceration, and Security Level</u>

Plaintiff concedes that his only claim against defendant is a First Amendment retaliation claim. (docket # 33, Plf. Brief at 2, 5, ID #s 210, 213). He has no possible claims against defendant based on the denial of his request for reclassification, his preferred job placement, his place of incarceration, or his security level. Arguments that Classification Director Smolinski made mistakes in her application of policy directives or operating procedures and that she should have given him the reclassification that he wanted are largely irrelevant because Michigan's prisoners do not enjoy any property interest in prison employment protected by the Due Process Clause. *See Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (*en banc*); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *see also Perry v. Rose*, No. 99-5240, 2000 WL 191803, at * 1 (6th Cir.

Feb. 7, 2000); *Brown v. Campbell*, No. 98-5182, 1999 WL 191240, at * 1 (6th Cir. Mar. 17, 1999) ("inmates do not have a constitutionally protected interest in their prison jobs"); *Hert v. Lewis*, No. 94-6097, 1995 WL 234622, at * 2 (6th Cir. April 20, 1995) (Sixth Circuit has "consistently held that prisoners have no constitutionally protected property interest or liberty interest in prison employment.").

Prisoners do not have the right to be housed at the institution of their choice and have no liberty interest in their place of incarceration. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995). Prisoners do not have a constitutional right to be incarcerated within a particular security classification. *See Meachum v. Fano*, 427 U.S. at 228-29; *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003).

4. <u>Retaliation</u>

On summary judgment, a plaintiff asserting a First Amendment retaliation claim must present evidentiary proof on which a reasonable trier of fact could find (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*); *see also Lustig v. Mondeau*, 211 F. App'x 364, 372 (6th Cir. 2006). The plaintiff has the burden of proof on all three elements. *See, e.g.*, *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

Plaintiff filed a grievance against defendant after she refused to give him his preferred job pool assignment. A prisoner's filing of a grievance can constitute protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Scott v. Stone*, 254 F. App'x 469, 472 (6th Cir. 2007). This particular grievance, however, could not possibly have been the motivation for allegedly retaliatory action occurring *before* the grievance was filed. The parties have not provided the court with a copy of plaintiff's March 7, 2006 grievance. For analytical purposes, I will assume that plaintiff's grievance was not frivolous and constituted protected conduct. *See Herron*, 203 F.3d at 415 (filing a frivolous grievance is not protected conduct); *accord Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008); *Ziegler v. Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004).

The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct. It is well established that "a prisoner is expected to endure more than the average citizen and enjoys no protected right to remain incarcerated in a given correctional facility." *Hix v. Tennessee Dep't of Corrections*, 196 F. App'x 350, 358 (6th Cir. 2006) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)). A transfer from one prison to another generally "cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *Hix*, 196 F. App'x at 358. Here, plaintiff's claim is even more attenuated, because he blames his eventual transfer to another prison on defendant's decision classifying him as unemployable. Defendant did not change plaintiff's security classification and she did not order his transfer. Further, "unemployable prisoners" are considered for reclassification "every 30 calendar days" until they are returned to work or school. (docket # 28-4, P.D. 05.01.100 ¶ BB, ID

# 193). Classifying an inmate as unemployable is not an action that would deter a person of ordinary firmness.

Finally, under the causation element of a prisoner's *prima facie* case for retaliation, the subjective motivation of the decisionmaker is at issue. "The third element of a First Amendment retaliation claim requires the plaintiff to prove a causal connection between the protected conduct and the adverse action. When assessing motive in the context of a summary judgment motion, bare allegations of malice do not suffice to establish a constitutional claim. This court has held that circumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is appropriate." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 399-400 (6th Cir. 2010) (internal quotations and citations omitted). Plaintiff must demonstrate that his protected speech was a substantial or motivating factor in the adverse action taken by defendant. Specifically, plaintiff must point to specific, nonconclusory allegations reasonably linking his speech to the adverse action. *Rodgers v. Banks*, 344 F.3d 587, 602 (6th Cir. 2003). The Sixth Circuit has interpreted this inquiry to mean that a motivating factor is "essentially but-for cause-without which the action being challenged simply would not have been taken" *Vereecke*, 609 F.3d at 400 (quoting *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007) and *Greene v. Barber*, 310 F.3d 889, 897 (6th Cir. 2002)). "Substantial case law from this circuit cautions about the permissibility of drawing an inference of causation from temporal proximity alone." *Vereecke*, 609 F.3d at 400; *see Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("The law is clear that temporal proximity standing alone, is insufficient to establish a causal connection for a retaliation claim.").

Plaintiff's claim relies only on temporal proximity. He has not presented evidence sufficient to support a causal connection between his grievance and defendant's action classifying him as unemployable.

"Even if the plaintiff establishes all three elements, the defendant may avoid liability by showing 'that the same action would have been taken in the absence of protected activity.'" *Whiteside v. Parrish*, No. 08-4060, 2010 WL 2842746, at * 4 (6th Cir. July 21, 2010)(quoting *Thaddeus-X*, 175 F.3d at 399). Defendant has shown that she would have taken the same action if plaintiff had not filed his grievance. Plaintiff's real objection is to defendant's original classification decision, which certified plaintiff for certain jobs but not his preferred employment. His grievance came only afterwards. Everything that occurred after the grievance was filed was dictated by MDOC policy, not by defendant. Plaintiff's proofs in support of causation are nonexistent, and no reasonable trier of fact could hold in his favor. Defendant is entitled to judgment in her favor as a matter of law on plaintiff's retaliation claim.

### **Recommended Disposition**

For the foregoing reasons, I recommend that plaintiff's claims for injunctive relief be dismissed as moot and that his claims for damages against defendant in her official capacity be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I further recommend that defendant's motion for summary judgment (docket #27) be granted on all plaintiff's remaining claims and that a final judgment be entered in defendant's favor.

Dated: August 31, 2010          /s/ Joseph G. Scoville
                                United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).